IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


GREGORY JONES,
       Petitioner,

vs.                                     Case No.:  5:03cv238/RS/EMT

JAMES R. McDONOUGH,[1]
       Respondent.
_____/

## ORDER AND
## REPORT AND RECOMMENDATION

       Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 and a supporting memorandum (Docs. 1, 7).  Respondent filed an answer, including relevant portions of the state court record (Doc. 17).  Petitioner replied (Doc. 20).

       The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D.Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that an evidentiary hearing is not required for disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.       BACKGROUND AND PROCEDURAL HISTORY

       Petitioner does not dispute the following facts asserted by Respondent in its "Statement of the Case and Facts" (*see* Doc. 20 at 1; Doc. 17 at 2-6).  On February 10, 2000, the State of Florida charged Petitioner with one count of conspiracy to purchase cocaine in violation of section 893.13, Florida Statutes (Doc. 17, Ex. A1 at 1).  During jury selection on July 24, 2000, the prosecutor exercised a peremptory challenge on Eddie Clemons, the only black prospective juror, because: Clemons lived in Jacob, Florida, the small community where the crime occurred; although the lengthy investigation that led to the arrest of Petitioner and more than twenty others was highly

---

[1]James R. McDonough succeeded James Crosby as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

publicized, Clemons claimed to have heard nothing about the arrests; and Clemons claimed to have no opinion about officers working undercover or about the burden of proof (*id*. at 107-08). The trial judge found these reasons to be race neutral and upheld the peremptory challenge over defense counsel's objection (*id.* at 108).

The trial was held on July 26, 2000 (Doc. 17, Ex. A2). As a preliminary matter, defense counsel expressed concern that the State intended to seek admission of a videotape that was a copy of an original video, and although the defense had viewed the original video prior to trial, it had not had an opportunity to review the copy (*id*. at 5-6). Defense counsel requested an opportunity to view the copy prior to publication of the video to the jury (*id*. at 6). The trial court granted the request, and defense counsel, as well as the defendants, viewed the copy (*id*. at 6-7). Defense counsel then essentially objected to admission of the copy on the ground that it was not the original (*id*. at 7). The trial court directed counsel to make an objection at the appropriate time during trial (*id*.).

At trial, Joey Rabon, of the Jackson County Sheriff's Office (JCSO), testified that his office participated in a three-month undercover drug investigation with personnel from the Marion County Sheriff's Office (MCSO) and Gadsden County Sheriff Office (GCSO) (*id.* at 22-23). He described the investigation and testified that during the course of the investigation he arrested Petitioner, who was in the front passenger seat of a car, and Petitioner's brother, Kenneth, who was in the driver's seat (*id.* at 23-26). Rabon also testified that twenty-two drug transactions were recorded on an 8mm tape, and he dubbed the transaction involving Petitioner and his brother onto an audio/visual tape (*id.* at 27-28). Rabon identified the redacted tape as accurate and testified that Petitioner had viewed the original twenty-two transaction tape (*id.* at 28, 32). Rick Lohbauer of the MCSO testified that he ran the audio/video equipment, that he viewed the redacted tape, and that the tape was accurate and approximately five minutes long (*id.* at 35-39). Deputy Michael Rolls of the MCSO testified that he was working undercover as a street-level dealer when Petitioner asked to purchase a half ounce of cocaine (*id.* at 41-43). Petitioner, his brother, and another man were in a car, and Rolls talked with all three men and gave them a twenty-dollar rock to sample, after which they said they would wait for Rolls to bring them a half ounce (*id.*). Rolls viewed the redacted video tape that morning and testified that it was accurate (*id.* at 47). When the prosecutor asked to play the tape for the jury, defense counsel objected regarding the chain of custody of the tape (*id.* at 47). The court

denied the objection and allowed the redacted tape to be played (*id.* at 48).  Dave Edmondson of the JCSO was the final witness for the State.  He identified money seized from the defendants (*id.* at 78-82).  The State then rested (*id.* at 83).

Petitioner moved for a judgment of acquittal, but the motion was denied (*id.* at 83- 88).  The defense then rested (*id.* at 89).  During the charge conference, defense counsel asked for an entrapment instruction (*id.* at 95).  The court told him that he could argue alternative theories of defense, but then put off a final decision on the requested instruction until after lunch so that the parties could research the matter (*id.* at 98).  After lunch, the defense could produce nothing to counter the court's own research (*id.* at 100-02).  During closing argument, the defense argued that there was no agreement to purchase cocaine, that there were conflicts in the evidence, and that there was a lack of evidence (*id.* at 105-09).

The jury convicted Petitioner as charged (Doc. 17, Ex. A1 at 24; Ex. A2 at 132).  The court sentenced Petitioner to five years of imprisonment (Doc. 17, Ex. A1 at 37-41, 141).

Petitioner raised a single issue on appeal:  whether the trial court erred in denying Jones' motion for judgment of acquittal (Doc. 17, Ex. A3).  The appellate court affirmed Petitioner's conviction and sentence per curiam without opinion on August 13, 2001 (Doc. 17, Ex. A5).  Jones v. State, 793 So.2d 934 (Fla. 1st DCA Aug. 13, 2001) (Table).

While Petitioner's direct appeal was pending, Petitioner filed a motion for relief pursuant to Florida Rule of Criminal Procedure 3.800 on the ground that his sentence was excessive (Doc. 17, Ex. D1 at 7-9).  He argued that as a first offender, he should have received probation instead of a prison sentence (*id.*).  The trial court summarily denied the motion on August 30, 2000 (*id.* at 10). Petitioner did not appeal the decision.

On August 19, 2001, Petitioner filed a second Rule 3.800 motion arguing that his sentence exceeded the sentencing guidelines because the maximum sentence he could receive was a non-prison sanction (Doc. 17, Ex. D1 at 1-4).  The trial court summarily denied the motion (*id.* at 5-6). The appellate court affirmed per curiam without opinion, with the mandate issuing June 25, 2002 (Doc. 17, Exs. D2, D3).  Jones v. State, 819 So.2d 756 (Fla. 1st DCA May 29, 2002) (Table).

On November 13, 2001, Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Ex. B1 at 1-11).  In the motion Petitioner raised the following grounds:

> Ground 1:  Defense counsel was ineffective during trial when counsel failed to move for a severance hearing.
>
> Ground 2:  Defendant claim's [sic] Assistant State Attorney constituted [sic] prosecutorial misconduct when misleading jury as to State's case.
>
> Ground 3:  Defendant was denied a fair trial when trial judge errored [sic] in allowing a[n] all white jury.

(*id*. at 6-8).  The post-conviction court summarily denied the motion (*id*. at 26-27).  The state appellate court affirmed the decision per curiam without opinion, with the mandate issuing June 3, 2002 (Doc. 17, Exs. B2, B3).[2]  Jones v. State, 816 So.2d 611 (Fla. 1st DCA May 6, 2002) (Table).

On May 19, 2002, Petitioner filed a timely second Rule 3.850 motion, raising the following claims:

> Grounds one and two:  Defendant was denied meaningful access to the courts because the Department of Corrections failed to provide him a prison law clerk with adequate legal training.
>
> Ground three:   the trial court lacked jurisdiction to convict or sentence Defendant because the court failed to adhere to Rule 3.130 of the Florida Rules of Criminal Procedure (affording defendants a first appearance within twenty-four (24) hours of arrest).
>
> Ground four: Defendant's counsel was ineffective for failing to ask prospective jurors whether they would give more weight to the testimony of law enforcement officers than other witnesses.
>
> Ground five:  the trial court violated Defendant's rights under the United States Constitution and state law by failing to give written reasons for a departure sentence in a timely manner.

---

[2]The state appellate court considered the appeal of Petitioner's three post-conviction motions without briefs from the parties.

> Ground six:  the trial court violated Defendant's rights under the United
> States Constitution and state law by permitting the State to exercise a peremptory
> challenge to the only black juror on the jury panel.
>
> Ground seven:  Defendant's counsel was ineffective for filing a notice of
> appeal before the court ruled on the motion for new trial.

(Doc. 17, Ex. C1 at 1-72) (rephrased).  The post-conviction court ordered the State to respond to the fourth claim and summarily denied the other claims (*id*. at 73-74).  Upon receipt of the State's response, the court summarily denied the fourth claim as well (*id.* at 125-26).  The appellate court affirmed the decision per curiam without opinion on July 22, 2003, with the mandate issuing August 27, 2003 (Doc. 17, Exs. C2, C3).  Jones v. State, 852 So.2d 611 (Fla. 1st DCA July 22, 2003) (Table).

Petitioner filed the instant federal habeas petition on September 4, 2003 (Doc. 1 at 8). Respondent concedes that the instant petition is timely (Doc. 17 at 7).

II.      STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.

Section 2254 now provides:

(d)     An application for a writ of habeas corpus on behalf of a person in custody
        pursuant to the judgment of a State court shall not be granted with respect to
        any claim that was adjudicated on the merits in State court proceedings unless
        the adjudication of the claim–
        (1)     resulted in a decision that was contrary to, or involved an
                unreasonable application of, clearly established Federal law, as
                determined by the Supreme Court of the United States; or
        (2)     resulted in a decision that was based on an unreasonable
                determination of the facts in light of the evidence presented in the
                State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).[3]  The appropriate test in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412-13; Ramdass v. Angelone, 530 U.S. 156, 120 S.Ct. 2113, 2119-20, 147 L.Ed.2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding.  See Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343-45 (11th Cir. 2002).  First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication.  Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343.  Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law.  Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344.  "The 'contrary to' clause

---

[3]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-375, 390-399, 120 S.Ct. at 1499-1503, 1511-1516); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and —except as to the footnote – Scalia) in part II (529 U.S. at 403-413, 120 S.Ct. at 1518-1523).  The opinion of Justice Stevens in Part II was joined by Souter, Ginsburg, and Breyer.

in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent." <u>Wellington</u>, 314 F.3d at 1260 (quoting <u>Fugate v. Head</u>, 261 F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002) (quoting <u>Williams</u>, 529 U.S. at 405)).   "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." <u>Wellington</u>, 314 F.3d at 1260 (citing and quoting <u>Williams</u>, 529 U.S. at 404-06).   If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." <u>Fugate</u>, 261 F.3d at 1216.   Likewise, if the facts of the Supreme Court cases and the petitioner's case are <u>not</u> substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." *Id.* (citing and quoting <u>Williams</u>, 529 U.S. at 406).   A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 410.   The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" <u>Bell v. Cone</u>, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (quoting <u>Williams</u>, 529 U.S. at 411).   Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).   A state court's incorrect application of clearly

established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that that [the state court] judgment is infected by constitutional error."  Williams, 529 U.S. at 389.  "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations."  Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149, 158 L.Ed.2d 938 (2004) (citation omitted).  Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent.  Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n. 4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence."  Section 2254(e)(1); see  Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." (dictum)); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835-36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); see also Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations).  Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence.  See Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) (concluding that "[petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record")).

III.    EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365-66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); Picard, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In Anderson v. Harless, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the

---

[4]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
        (A)  the applicant has exhausted the remedies available in the courts of the State; or
        (B) (i)  there is an absence of available State corrective process; or
            (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  *Id.*, 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364, 115 S.Ct. 887.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365-66.  Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004).  The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example,

_____

[5]The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*

Prior to Duncan, the Eleventh Circuit broadly interpreted the "fair presentation" requirement. *See*, *e.g.*, Watson v. Dugger, 945 F.2d 367 (11th Cir. 1991) (finding issue to be exhausted when petitioner argued in state court that trial court had failed to follow state law which required proof of all elements of the crime, and argued in federal court that this was a due process violation); Mattox v. Dugger, 839 F.2d 1523 (11th Cir. 1988) (holding that a federal habeas corpus petition should not be dismissed on grounds of procedural default when a petitioner has previously brought an issue before a state court alleging only state law violations, when such a claim is equally supported by federal law, and the state cites such federal law in support of its position).  However, after Duncan, the Eleventh Circuit has taken a more restrictive approach.  For example, in Zeigler v. Crosby, the Circuit Court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The court specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review.  O'Sullivan, 526 U.S. at 839-40, 848.  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734-35 and n.1, 111 S.Ct. 2546, 2555 and n.1, 115 L.Ed.2d 640 (1991); Caniff v. Moore, 269 F.3d 1245,

1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991).  However, a petitioner may obtain federal review of his claim if the state procedural rule is applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

## IV.   PETITIONER'S CLAIMS

### A.   Ground one:  Ineffective assistance of counsel.

Petitioner alleges that during trial, the jury was "instructed" on whether or not they would believe an officer's testimony more than a pretrial detainee's testimony (Doc. 7 at 3).  Petitioner states the jury was subsequently misled and confused by the State's "instruction," but defense counsel failed to object to the "instructions" (*id*.).  Petitioner additionally argues he was entitled to a jury instruction on a lesser included offense of attempt to purchase cocaine (*id*. at 4).

### 1.   Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To obtain relief under Strickland, a petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687-88.  If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.  Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied.  Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003), *cert. denied*, 541 U.S. 1034, 124 S.Ct. 2104, 158 L.Ed.2d 718 (2004); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ( "Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." (citation omitted)).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is

shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

Moreover, "[c]ounsel will not be deemed unconstitutionally deficient because of tactical decisions."  McNeal v. Wainwright, 722 F.2d 674, 676 (11th Cir. 1984) (citations omitted); Crawford, 311 F.3d at 1312 ("Deliberate choices of trial strategy and tactics are within the province of trial counsel after consultation with his client.  In this regard, this court will not substitute its judgment for that of trial counsel." (quotation marks, internal alteration, and citation omitted)).  There is a strong presumption that counsel's performance was reasonable and adequate, with great deference being shown to choices dictated by reasonable strategy.  Rogers, 13 F.3d at 386; see also Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004), cert. denied,--- U.S. ----, 125 S.Ct. 1703, 161 L.Ed.2d 531 (2005).  "[T]here are no 'absolute rules' dictating what reasonable performance is or what line of defense must be asserted."  Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence -- which is also constitutionally protected -- and would restrict the wide latitude counsel have in making tactical decisions.'"  Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

Petitioner's burden of demonstrating prejudice is high.  Wellington, 314 F.3d at 1260.  The Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  Id. (quoting Strickland, 466 U.S. at 693).  However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not," or prove by a preponderance of evidence, that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693-94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams, 529 U.S. at 405-406.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694-95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.  Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways.  Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect.  Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.  Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

*Id.* at 695-96.

2.      Federal Review of State Court Decision

In his second Rule 3.850 motion, Petitioner raised a claim of ineffective assistance of counsel based upon counsel's failure to question all jurors as to whether they would give more weight to the testimony of law enforcement officers than other witnesses (*see* Doc. 17, Ex. C1 at 42-50).  In support of his claim, Petitioner alleged that two prospective jurors, Mr. McCoy and Ms. Peacock, indicated they had "ties to law enforcement," in that Mr. McCoy stated he was employed part-time as a security officer, he was an intelligence officer for the Air Force for twenty years, and he served as a member of a military board handling court marshals, and Ms. Peacock stated she was employed by a child support enforcement agency, and her uncle was employed by the Secret Service and worked undercover in the area where the alleged crime occurred (*id*. at 44).  Petitioner asserted the prosecutor asked a prospective juror, Mr. Herndon, whether he would apply the same criteria to the

testimony of a law enforcement officer, in terms of weighing and evaluating his testimony, as he would all the other witnesses, and Mr. Herndon responded in the affirmative.  Petitioner asserted that Jurors Shores, Parrish, and Lewis were not in the jury box when the questioning of Mr. Herndon occurred, but they were seated in the courtroom.[6]  Petitioner argued that had Jurors Shores, Parrish, and Lewis been questioned about whether they would apply the same credibility criteria to testimony of law enforcement officers and testimony of other witnesses, they would have stated that they could not apply the same credibility criteria (*id*. at 122).  He also contended it was impossible to determine whether Jurors McCoy and Peacock were predisposed to believe that the testimony of a law enforcement officer was more credible than an "ordinary citizen" (*id*. at 45).

The state court denied Petitioner's claim based upon the following factual findings:  (1) the prosecutor questioned the prospective jurors with regard to their ability to use the same criteria to weigh the testimony of all of the witnesses; (2) the prosecutor questioned all of the prospective jurors as to their ability to follow the instructions given by the court, which included weighing and evaluating the evidence; (3) Petitioner failed to allege a factual basis for his allegation that Jurors Shores, Parrish, and Lewis would have admitted that they could not apply the same criteria to all witnesses; and (4) there was no trial testimony from "ordinary citizens" to be weighed against the testimony of the officers; therefore, Petitioner was unable to show he was prejudiced by his counsel's alleged error (Doc. 17, Ex. C1 at 125).

Petitioner concedes that Jurors Shores, Parrish, and Lewis were in the courtroom when the following exchange occurred between the prosecutor and Mr. Herndon:

> Q.      I would like to go over the list of witnesses that may testify on behalf of the State.  If you recognize any of these witnesses raise your hand and we'll go into it at that time.  Do any of [you] know Dave Edmondson, Jackson County Sheriff's Office?  How would you know him, Mr. Herndon?
>
> MR. HERNDON:       He married a good friend of mine's daughter that lives down in Sneads.

---

[6]The record shows that two panels of prospective jurors were questioned during jury selection (Doc. 17, Ex. A1 at 60-131).  Mr. McCoy and Ms. Peacock were in the first panel, and Mr. Shores, Ms. Parrish, and Mr. Lewis were in the second panel (*id*.).  The second panel was present in the courtroom during voir dire of the first panel (*id*.).  Mr. McCoy, Ms. Peacock, Mr. Shores, Ms. Parrish, Mr. Lewis, Mr. Evans, and Ms. Kirkland were selected for the jury, including an alternate (*id*. at 127).

> Q.      If he testifies in this case can you apply the same criteria to his testimony in weighing and evaluating his testimony as you would all the other witnesses?

> A.      Sure.

(Doc. 17, Ex. A1 at 81).  Additionally, the trial transcript shows that the judge gave the following instruction regarding weighing the testimony of witnesses:

> It is up to you to decide what evidence is reliable.  You should use your common sense in deciding which is the best evidence and which evidence should not be relied upon in considering your verdict.  You may find some of the evidence not reliable or less reliable than other evidence.

> You should consider how the witnesses acted, as well as what they said. Some things you should consider are:

> Did the witness seems to have an opportunity to see and know the things about which the witness testified?

> Did the witness seem to have an accurate memory?

> Was the witness honest and straightforward in answering the attorneys' questions?

> Did the witness have some interest in how the case should be decided?

> Does the witness' testimony agree with the other testimony and other evidence in the case?

> Did the witness at some other time make a statement that is inconsistent with the testimony he gave in court?

> You may rely upon your own conclusion about the witness.  A juror may believe or disbelieve all or any part of the evidence or the testimony of any witness.

(Doc. 17, Ex. A2 at 124).

Petitioner has offered nothing but his own speculation that Jurors McCoy, Peacock, Shores, Parrish, and Lewis gave more credibility to the trial witnesses because they were law enforcement officers than if they were "ordinary citizens."  In light of the absence of factual support for this claim, Petitioner has failed to establish a reasonable probability that the result of the trial would have

been different if counsel had questioned each juror as to whether he/she would give more credibility to a witness if he were a law enforcement officer than if he were not.  Thus, the state court's decision that Petitioner failed to establish he was prejudiced by counsel's alleged error was not contrary to or an unreasonable application of <u>Strickland</u>.

As to Petitioner's subsidiary claim that counsel performed deficiently by failing to request a jury instruction on a lesser included offense of attempt to purchase cocaine, the claim is without merit.  Petitioner was charged with conspiracy to purchase cocaine (Doc. 17, Ex. A1 at 1).  According to Florida law, certain crimes, including conspiracy, do not have attempts.  *See* The Florida Bar 2002 Florida Standard Jury Instructions in Criminal Cases, Fourth Edition, Part Four: Special Proceedings Appendix, Schedule of Lesser Included Offenses.  Therefore, Petitioner has failed to establish that his counsel erred in failing to request the instruction, or a reasonable probability that the trial court would have included the instruction if counsel had requested it.

B.      <u>Ground two:  Trial counsel failed to motion to the court to severe [sic] the criminal hearings and trial.</u>

Petitioner alleges his counsel provided ineffective assistance by failing to move to sever his trial from the trial of his co-defendant.  Petitioner states as a result of counsel's failure to sever the trials, he was found guilty "based on the same set of facts" as his co-defendant (Doc. 7 at 5).  He contends that if counsel would have moved to sever the trial, there is a reasonable probability he would have been acquitted (*id.* at 6).

1.      Clearly Established Supreme Court Law

The applicable legal standard for analyzing a claim of ineffective assistance of counsel is set forth *supra*.

2.      Federal Review of State Court Decision

Petitioner raised this claim in his first Rule 3.850 motion (Doc. 17, Ex. B1 at 6).  The state court denied Petitioner's claim on the ground that he failed to provide factual support for his claim (*id.* at 26).  As factual support Petitioner referenced two portions of the trial transcript, page 67, lines 1-25 and page 72, lines 17-25 (*id.*).  However, the state court determined that those passages were irrelevant to the claim and insufficient to show counsel's conduct was deficient or that Petitioner

suffered prejudice as a result of counsel's performance (*id.*).  In light of Petitioner's failure to state facts showing his counsel was ineffective, the state court denied his claim (*id.*).

The following are the portions of the trial transcript referenced by Petitioner.  The first excerpt is cross examination by defense counsel of Mike Rolls, a narcotics agent with the Marion County Sheriff's Office:

> Q.   Do you recall if the back seat passenger ever asked you what the price was?
>
> A.   He also asked me what the price was too.  I don't remember if it was that time or if it was a little further on.
>
> Q.   So at some point in this video all 3 of these individuals said, "What's the price?"
>
> A.   "What's the price"?
>
> Q.   Judge, I don't want the court to think I'm wasting its time, I would like to play the video and let him point out the time that he's talking about?
>
> THE COURT:        No problem.
>
> (THEREUPON THE VIDEO WAS REPLAYED)
>
> Q. (MR. PEEL)        Officer, if you don't mind, point out the times that all 3 of these individuals asked you how much it was and who these individuals are.
>
> A.   All right.
>
> "Okay.  Let me sell a 20.  I will sell 20, told them my boy picking it up.  (Inaudible.)  Hey man, yeah, my boys going to cut it up.  No, no, we want it straight.  Y'all want it straight.  How much does it go for?"
>
> Q.   Okay.  That's one of the points, do you know which of the occupants made that statement?
>
> A.   I couldn't tell you by their voice.

(Doc. 17, Ex. A2 at 67).

Defense counsel's cross-examination of Agent Rolls continued:

Q. (MR. PEEL)         Officer, we've watched that video three or four times in pieces and parts, would you agree that in that video the driver of that vehicle, you never hear him say a single word, do you?

A.        I can't tell whose voices are who.

Q.        Did you hear more than one voice?

A.        Yes.

Q.        At the time that my clients were arrested isn't it true that they were attempting to leave the area?

A.        I have no idea, I don't get involved in the arrest.

(Doc. 17, Ex. A2 at 72-3).

Petitioner has failed to show that his counsel had a meritorious basis for moving to sever the trials.  A trial court must grant a motion to sever a co-defendant if the failure to do so would render the trial fundamentally unfair.  Williams v. Singletary, 114 F.3d 177, 179 (11th Cir. 1997) (citing Johnson v. Dugger, 817 F.2d 726, 728 (11th Cir. 1987)).  The Eleventh Circuit has established a four-step test for determining whether a defendant's nonsevered trial was fundamentally unfair:

(1) Do the alleged conflicts with co-defendant's defenses go to the essence of [Petitioner's] defense?

(2) Could the jury reasonably construct a sequence of events that accommodates the essence of both defendants' defenses?

(3) Did the conflict subject the appellant to compelling prejudice?

(4) Could the trial judge ameliorate the prejudice?

Smith v. Kelso, 863 F.2d 1564, 1568 (11th Cir. 1989).[7]

---

[7]Although the Eleventh Circuit has rejected application of the four-part Smith v. Kelso test to severance issues brought under Rule 14 of the Federal Rules of Criminal Procedure in the context of federal criminal proceedings, and instead has determined that the standard set forth by the Supreme Court in Zafiro v. United States, 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) applies to Rule 14 claims, see United States v. Blankenship, 382 F.3d 1110, 1125, n.27 (11th Cir. 2004), the Eleventh Circuit has not abrogated the Smith v. Kelso test to claims of constitutional error in state criminal proceedings in the context of federal habeas review under section 2254.  See Williams, 114 F.3d at 180-81.

In the instant case, Petitioner fails to support his claim with facts showing that he and his co-defendant had conflicting defenses.  A thorough review of the trial transcript shows that the defense theory propounded by counsel was that there was never an agreement between the defendants to purchase cocaine (Doc. 17, Ex. A2 at 105).  Counsel argued to the jury that the only agreement between the defendants was that they did not want the $20-worth of crack cocaine offered for sale by Agent Rolls, and they did not want the $100-worth of crack cocaine offered by Rolls (*id*.).  Counsel argued that, at most, the defendants agreed to wait for Agent Rolls' friend "Lonnie" to arrive (*id*. at 105-06).  Counsel also told the jury to consider the evidence as it related to each defendant:

> Other things I'm going to ask you to do is look at the evidence as it relates to each defendant. Each one of them is on trial here today. They're charged with the same crime but they're here individually. Look at what each of them did. Did either one of them commit a crime, did both of them commit a crime or did neither one of them commit a crime?
>
> Now, what evidence specifically has been introduced against each of those defendants. What evidence did they produce against Greg [Petitioner]? Consider them separately when you're considering that evidence when I ask you to do that.
>
> What evidence was presented against this man? What evidence of any kind of conspiracy did they show you against this man right here, Terrell [Petitioner's co-defendant]? What did he do? What did he say?
>
> Officer Rolls said that he could hear several different voices on that video. You saw the video, you listened to the video, did you hear Officer Rolls and one other individual talking or did you hear other individuals talking?
>
> I disagree with Officer Rolls, I don't think there was just -- I don't think that everybody was talking and everybody was heard on that video. I don't think you ever heard this man say a single word.
> . . . .
> What about the money. I thought that was kind of interesting. Officer Rolls said that the passenger showed him $300, he was clear about that. "Passenger showed me some money, about $300." Remember that the passenger in this case was Gregory Jones. They were quite clear on that. But when they were arrested Gregory Jones had $20 on him.
> . . . .

Another thing is that video doesn't show my clients being arrested.  Where were they at the end of that video?  Were they attempting to leave the area when they were arrested?  Where is that footage?

. . . .

I'm going ask [sic] that you consider all of these things and that you individually look at these two defendants and determine did they prove their case against Kenneth Terrell Jones beyond each and every reasonable doubt.  Did they prove their case against Gregory Jones beyond each and every reasonable doubt.

. . . .

I'll leave you with this.   There's no agreement, there was never any agreement.  The only thing they agreed to was they didn't want what this gentleman had and was trying to sell and they agreed they were going to sit there and wait on a friend of theirs, Lonnie.

The only thing that video shows is agreeing to wait.  Agreeing to wait on Lonnie is not a crime, it's not the crime they're charged here today.

I remind you one more time, each of these individuals is on trial separately from one another.  It is unique to have one attorney representing two defendants.

Go back and deliberate as to each individual client not both together.  I'm convinced when you do that and apply the evidence to the rules the judge will give you you will come back and you will determine that Gregory Jones is not guilty of the crime that he's charged with, conspiracy to purchase cocaine.  Kenneth Terrell Jones is not guilty of the crime that he is charged with, conspiracy to purchase cocaine.

(Doc. 17, Ex. A2 at 107-10, 119).

Petitioner has failed to allege any facts showing that his defense conflicted with his co-defendant's, or that any alleged conflict went to the essence of Petitioner's defense.  Furthermore, the jury could reasonably construct a sequence of events that accommodated each defendant's defense.  For example, the jury could reasonably construct a scenario in which Petitioner's co-defendant conspired with the third co-defendant to purchase cocaine.  Moreover, Petitioner has failed to show that he suffered "compelling prejudice" as a result of the joint trial.  He does not allege that he did not have an opportunity to confront or coss-examine the witnesses against him, that his co-defendant implicated him in any way, or that the evidence was too complex for the jury to apply to each defendant.  Therefore, he cannot show that the trial court probably would have granted counsel's motion to sever if counsel had made the motion.  Accordingly, the state court's

conclusion that Petitioner failed to show that his counsel performed deficiently and that he was prejudiced by counsel's performance, was not unreasonable.

      C.      Ground three:  Ineffective assistance of counsel.

      Petitioner claims that his counsel was ineffective by failing to move to suppress the videotape entered into evidence on the ground that the videotape was a copy, and the State withheld the original videotape in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).  Petitioner alleges the videotape was a copy of the original tape and did not contain portions of the original video showing the defendants' interaction with undercover agents (Doc. 1 at 6; Doc. 7 at 8-10).  Petitioner alleges the deleted portions of the video would have supported an entrapment defense or shown that a conspiracy to purchase cocaine never occurred (Doc. 7 at 9-10).

      Respondent states that in Petitioner's first Rule 3.850 motion, he claimed that the prosecutor engaged in prosecutorial misconduct by offering into evidence a copy of the videotape without permitting the defense to question the genuineness of the copy, the chain of custody, or the relevance and materiality of the copy (see Doc. 17 at 11; Ex. B1 at 7, 20-22).  The state court determined that the claim was procedurally barred, as it could or should have been raised on direct appeal (Doc. 17, Ex. B1 at 27).  Furthermore, Respondent argues, Petitioner's claim is without merit, as three trial witnesses testified that the copy was an accurate redaction of the original tape.  Therefore, Petitioner failed to show that counsel had a meritorious basis for seeking suppression of the tape (Doc. 17 at 11).

      In his reply, Petitioner contends this court should review his claim because a Brady violation is a structural error (Doc. 7 at 6).  Furthermore, he is entitled to review pursuant to the "actual innocence" exception to the procedural bar, as the original video shows that he was entrapped by police (id.).

      As Respondent has not expressly waived the exhaustion requirement, the court must first address whether Petitioner exhausted his claim in the state courts.[8]  The state court record establishes that Petitioner did not present to the state courts a claim of ineffective assistance of counsel based

_____

[8]Section 2254 provides, "A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."  28 U.S.C. § 2254(b)(3).

upon counsel's failure to seek suppression of the videotape.  Thus, the undersigned concludes that Petitioner failed to exhaust his state court remedies with respect to his ineffective assistance claim. As any attempt on Petitioner's part to return to state court to raise these claims would be barred as untimely and successive, Petitioner is deemed to have procedurally defaulted this claim.

Petitioner does not allege that an external impediment prevented him from presenting his ineffective assistance of counsel claim to the state court when he had the opportunity to do so. Indeed, the factual basis for the claim was included in Petitioner's first Rule 3.850 motion when he characterized his claim as one of prosecutorial misconduct; thus, the factual basis for the ineffective assistance of counsel claim was available, and the claim could and should have been included in his first Rule 3.850 motion.

Additionally, although Petitioner contends he is entitled to review under the "fundamental miscarriage of justice" exception to the procedural bar by relying on the alleged "newly discovered evidence" of the omitted scenes from the videotape, he falls far short of making the showing required by Schlup.  Petitioner alleges the original videotape would have shown he was entrapped by police.  However, the fact that the video would have made an affirmative defense available to Petitioner does not entitle him to qualification under the "actual innocence" exception.  *See* High v. Head, 209 F.3d 1257, 1270 (11th Cir. 2000), *cert. denied* 532 U.S. 909, 121 S.Ct. 1237, 149 L.Ed.2d 145 (2001) (The fundamental miscarriage of justice exception "is concerned with actual as compared to legal innocence.") (citing Sawyer v. Whitley, 505 U.S. 333, 339, 112 S.Ct. 2514, 2519, 120 L.Ed.2d 269 (1992)).

Furthermore, "'To be credible,' a claim of actual innocence 'requires petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial.'" High, 209 F.3d at 1270 (quoting Schlup, 513 U.S. at 324).  Petitioner must show "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  Schlup, 513 U.S. at 327.  The court must evaluate Petitioner's claim of actual innocence "in light of . . . evidence tenably claimed to have been wrongly excluded or to have become available after the trial." *Id.* at 328.  To establish actual innocence, a Petitioner's case must be "truly extraordinary." *Id.*

In the instant case, Petitioner alleges the original videotape would have shown: (1) "police abuse and misconduct," and (2) "exculpatory evidence extricating the Petitioner from committing the alleged crime" (Doc. 7 at 9).  However, evidence of police misconduct does not show that Petitioner was factually innocent of the crime.  As to the "exculpatory" evidence, Petitioner does not allege what the actual evidence is.  In light of Petitioner's failure to proffer credible evidence that he did not actually commit the crime, he is not entitled to review of his ineffective assistance claim through the fundamental miscarriage of justice exception.

Petitioner's failure to establish "cause and prejudice" or qualification for the fundamental miscarriage of justice exception to the procedural bar also precludes this court from reviewing the prosecutorial misconduct claim presented by Petitioner to the state courts.  The Florida courts have routinely and consistently applied the rule that claims of prosecutorial misconduct must be raised on direct appeal.  *See* Spencer v. State, 842 So.2d 52, 60-61 (Fla. 2003) (claims of prosecutorial misconduct raised in Rule 3.850 motion were procedurally barred, as each alleged violation appeared on the trial record, and they could and should have been raised on direct appeal).  In the instant case, the issue of the video being a copy of the original appears on the trial record (*see* Doc. 17, Ex. A2 at 5-8).  Thus, Petitioner could have raised the prosecutorial misconduct claim on direct appeal.  The fact that the trial record shows that the defense was aware of the existence of the original tape at the time of trial also precludes Petitioner from establishing a Brady violation, as the record conclusively establishes that the original videotape was not suppressed by the prosecution.  Therefore, Petitioner is not entitled to federal habeas relief.

D.     Ground four:  Denial of due process.

Petitioner next claims he was denied due process because he was not taken before a judicial officer within twenty-four (24) hours of his arrest (Doc. 1 at 6).  He contends the State's failure to facilitate a first appearance until seventy-two (72) hours after his arrest violated the Fourth and Fourteenth Amendments (Doc. 7 at 11-13).

Respondent contends that although Petitioner raised this claim in his second Rule 3.850 motion, the state court properly applied a procedural bar to the claim (Doc. 17 at 12).  Additionally, Petitioner failed to show cause and prejudice for the procedural default; therefore, the claim should be denied (*id*.).

In his reply, Petitioner asserts he was prejudiced by the delay in his first appearance because he was prevented from expeditiously exercising his constitutional rights (Doc. 20 at 7).

The record shows that Petitioner raised the issue of the State's failure to facilitate a first appearance within twenty-four hours in his second Rule 3.850 motion (Doc. 17, Ex. C1 at 28). Petitioner argued that the failure to provide a timely first appearance deprived the trial court of jurisdiction to convict and sentence him, and violated his Fifth, Sixth, and Fourteenth Amendment rights, as well as his rights under the state constitution and laws (*id*. at 28-29). The state court denied Petitioner's claim that the alleged error divested the court of jurisdiction to convict and sentence him (*id*. at 74). As to the non-jurisdictional aspect of Petitioner's claim, the state court held that the claim was procedurally barred on the ground that it should have been raised on direct appeal (*id*. at 75).

The state court properly applied the procedural bar to Petitioner's constitutional claim. Petitioner has failed to establish that the state court's application of the procedural bar was arbitrary, unprecedented, or manifestly unfair. Indeed, while this court has found cases where Florida courts have reviewed claims involving violations of Rule 3.130 on direct appeal, *see, e.g.* Kilgore v. State, 350 So.2d 1144 (Fla. 1st DCA 1977) and Cribbs v. State, 378 So.2d 316 (Fla. 1st DCA 1979), the court has found no cases where such issues were properly raised in a Rule 3.850 motion. Petitioner does not allege cause for his failure to raise this issue on direct appeal. Furthermore, the State's failure to facilitate a timely first appearance does not support a claim of actual innocence. Therefore, Petitioner is not entitled to federal review of this claim.

      E.     Ground five:  Ineffective assistance of counsel.

Petitioner alleges he received ineffective assistance of counsel because defense counsel failed to assert an entrapment defense at trial (Doc. 1 at 6 (continuation page); Doc. 7 at 14-17). Respondent contends Petitioner failed to exhaust this claim in the state courts and is now procedurally barred from doing so (Doc. 17 at 12). Furthermore, Petitioner failed to demonstrate cause for the procedural default or actual prejudice from the default, or that a fundamental miscarriage of justice would occur is this court refused to review the claim (*id*.). Petitioner did not respond to Respondent's argument in his reply (*see* Doc. 20).

The record shows that Petitioner did not raise this ineffective assistance of counsel claim in the state courts.  Furthermore, Petitioner does not allege cause for his failure to do so.  Moreover, the availability of a legal defense does not constitute a showing of factual innocence as is required to satisfy the fundamental miscarriage of justice exception to the procedural bar.  *See* High, 209 F.3d at 1270 (fundamental miscarriage of justice exception is concerned with actual as compared to legal innocence).  Therefore, federal habeas relief is unavailable.

    F.        Ground six:  Denial of a right to a fair trial.

As his final claim, Petitioner asserts that the trial court denied him a fair trial by permitting the State to exercise a peremptory challenge to dismiss the only African American prospective juror without a substantial reason or racially neutral grounds (Doc. 1 at 6 (continuation page); Doc. 7 at 18-19).

Respondent contends that Petitioner raised this claim in his first Rule 3.850 motion, but the state court determined that the claim was procedurally barred because is could and should have been raised on direct appeal (Doc. 17, Ex. B1 at 8, 27).  Petitioner raised the same claim in his second Rule 3.850 motion, but the state court determined the claim was procedurally barred as successive because Petitioner raised it in his first Rule 3.850 motion, and the claim was denied as procedurally barred (Doc. 17, Ex. C1 at 58-64, 74).

The state court properly applied the procedural bar when Petitioner raised this claim in his first Rule 3.850 motion.  At the time of Petitioner's trial, it was well established that a claim that the trial court improperly dismissed a juror was procedurally barred if raised in a Rule 3.850 motion if the claim could have been raised on direct appeal.  Rivera v. Dugger, 629 So.2d 105, 107 (Fla. 1993) (claim of whether trial court improperly dismissed a juror for cause is procedurally barred in post-conviction proceeding under Rule 3.850, as the claim should have and could have been raised on direct appeal); James v. State, 489 So.2d 737, 738 (Fla. 1986) (claim of trial court error in excusing blacks from jury through use of peremptory challenges should have been raised, if at all, on appeal and is not cognizable in post-conviction relief proceedings).

In the instant case, Petitioner does not allege that he was unable to raise this claim on direct appeal.  Furthermore, the trial transcript includes defense counsel's objection to the peremptory challenge as racially motivated, and the trial court's permitting the challenge upon the State's

articulating a racially neutral reason, thus, the factual basis for the claim was available to Petitioner when he filed his direct appeal.  Moreover, this claim does not constitute a showing of actual innocence to invoke the fundamental miscarriage of justice exception to the procedural bar. Therefore, Petitioner is not entitled to federal habeas relief.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that James R. McDonough is substituted for James Crosby, Jr. as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED** with prejudice.

At Pensacola, Florida, this 17th day of March 2006.


*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**